# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY FOTH, and AARON LUCUS on behalf of themselves and all other similarly situated persons, known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> INEOS STYROLUTION AMERICA, LLC, <br><br> Defendant. | No. 19-cv-00460 <br><br> Hon. Judge Sharon Johnson Coleman |

### DEFENDANT INEOS STYROLUTION AMERICA LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE PURSUANT TO § 216(b) OF THE FLSA

Defendant INEOS Styrolution America LLC ("Defendant" or "INEOS") respectfully submits this Memorandum of Law in Opposition to Plaintiff Anthony Foth's ("Foth") and Aaron Lucus' ("Lucus" and, collectively with Foth, "Plaintiffs") Motion for Conditional Certification and Issuance of Notice Pursuant to § 216(b) of the Federal Labor Standards Act ("FLSA").

Dated: April 24, 2019

Respectfully submitted,

INEOS STYROLUTION AMERICA LLC

*/s/ Darren M. Mungerson*
One of the Attorneys for Defendant

Darren M. Mungerson ARDC# 6256434
Lucas E. Deloach ARDC# 6330837
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1000
Chicago, IL 60654
312.372.5520

**I.     INTRODUCTION**

In this lawsuit, Plaintiffs allege that INEOS violated the FLSA "by not paying Plaintiffs for all compensable work time, including time spent donning and doffing required safety equipment and work clothes,…and not paying overtime hours." (Dkt. 16, at 1). Through Plaintiffs' Motion for Conditional Certification and Issuance of Notice Pursuant to § 216(b) of the FLSA (the "Motion"), they ask this Court to grant conditional certification and facilitate notice to "Defendant's current and former employees, specifically those hourly employees working in operations, maintenance, logistics, and the lab . . ." (*Id.* at 1-2). In so doing, however, Plaintiffs do not satisfy even the lenient evidentiary burden required for conditional certification. First, Plaintiffs fail to establish INEOS maintained any unlawful policy. In fact, Plaintiffs misstate INEOS' applicable policies and procedures, which expressly instruct employees to don Personal Protective Equipment ("PPE"), if necessary based on their work area, *after* they report to their workstation and to doff it *before* they leave it. Moreover, Plaintiffs – who were employed only in the Maintenance Department – provide no basis for the Court to conclude that they are similarly situated to the collective they seek to represent, comprised of hourly employees across multiple Departments in the facility and across at least 15 different job positions. As discussed below, the PPE required, if any, varies depending on where an employee is working within the facility and depending upon the duties required by an employee's job position.

Accordingly, conditional certification would not serve its intended function as a case management tool. Rather, it would propel this case down a pointless path of expensive and time-intensive discovery, only to reach a conclusion which is apparent already: the merits of Plaintiffs' claims should be determined individually, as they are not similarly situated to any identifiable collective.

## II. FACTUAL BACKGROUND

### A. INEOS' Business Operations

INEOS is a styrenics supplier that provides styrenic applications for products across a range of industries, including automotive, electronics, household, construction, healthcare, packaging and toys/sports/leisure. (Declaration of Matt Cuthbertson ("Cuthbertson Decl."), ¶ 3; Declaration of David Kingsbury ("Kingsbury Decl."), ¶ 3; and Declaration of Christine Cowser ("Cowser Decl."), ¶ 3). INEOS' Channahon site has three departments: Maintenance, which includes Mechanical, Instrument and Electrical, and Reliability; Operations; and Quality Control Laboratory ("QC Lab"). (Kingsbury Decl., ¶ 10; Cowser Decl., ¶ 11).

The work schedules of hourly employees vary by Department. Maintenance Department employees work eight and a half hour shifts, from 6:30 a.m. to 3:00 p.m., Monday through Friday, which includes a thirty minute uninterrupted, unpaid meal period. (Kingsbury Decl., ¶ 11, Ex. A; Cowser Decl., ¶ 12, Ex. C). Conversely, employees in the Operations and QC Lab Departments work twelve hour shifts with a thirty minute paid meal period. (Cowser Decl., ¶¶ 11, 13-14, 27, 29, Ex. C). Moreover, employees in the Operations and QC Lab Departments are relieved by another employee not earlier than 15 minutes prior to the scheduled end of the shift. (Cowser Decl., ¶ 15, Ex. C). Maintenance Department employees, on the other hand, are not relieved of their shifts by another employee and do not relieve any other employee of their shift. (Cowser Decl., ¶ 16; Kingsbury Decl., ¶ 5). In other words, unlike employees in the Operations and QC Lab Departments, Maintenance Department employees can leave work each day without waiting for anyone to relieve them. (Kingsbury Decl., ¶ 5).

INEOS' employees are required to wear PPE in certain areas of the Channahon site to minimize the risk that they could be injured. (Kingsbury Decl., ¶ 12). However, employees are not required to arrive before the start of their shift to don their PPE. (Kingsbury Decl., ¶ 16). In

2

this regard, INEOS does not require employees to don PPE before their shifts begin or to doff PPE after their shift ends. (Kingsbury Decl., ¶ 13). Instead, Plaintiffs were free to don their PPE once arriving at their workstation and to doff it before leaving their workstation during their regularly scheduled shifts. (Kingsbury Decl., ¶ 13). Moreover, INEOS only requires employees to don PPE as necessary based on the work they are doing and where they are located. (Kingsbury Decl., ¶ 15). In this regard, employees in the Maintenance and QC Lab Departments do not wear the same PPE as employees in the Operations Department and would need to don additional PPE only when they enter the process areas where Operations employees work. (Kingsbury Decl., ¶ 14).

Every employee is different as to the amount of time they choose to spend donning PPE. (Kingsbury Decl., ¶ 17). It is up to the individual, but it typically takes only a nominal amount of time – no more than 2 to 3 minutes – to don PPE. (Kingsbury Decl., ¶ 17). Maintenance Department employees generally leave the building at 3:00 p.m. (Kingsbury Decl., ¶ 18). However, they report to their workstations in the shop around 2:45 p.m. to change out of their PPE. (Kingsbury Decl., ¶ 18).

      **B.**     **Plaintiffs' Employment With INEOS**

Foth formerly worked at INEOS as a Reliability Technician in the Maintenance Department. (Cowser Decl., ¶ 5). Likewise, Lucus currently works for INEOS as a Maintenance Mechanic II in the Maintenance Department. (Cowser Decl., ¶ 6). At the start of their scheduled shift, Maintenance Department employees attend a daily "tailgate" meeting. (Cuthbertson Decl., ¶ 5). Maintenance Department employees, including Plaintiffs, were <u>not</u> expected to be dressed in PPE at these meetings. (Cuthbertson Decl., ¶ 5). At some meetings Plaintiffs wore PPE and at other meetings they did not. (Cuthbertson Decl., ¶ 7). Importantly, no Maintenance Department employee, including Plaintiffs, has ever been required to don PPE before his shift began or to

3

doff PPE after his shift ended. (Cuthbertson Decl., ¶¶ 6, 7).

Despite Plaintiffs' allegations to the contrary, virtually none of the Maintenance Department employees use the locker room. (Cuthbertson Decl., ¶ 11). Specifically, Plaintiffs rarely if ever used the locker room to don or doff their PPE. (Cuthbertson Decl., ¶ 11). Instead, Foth and Lucus each store(d) their PPE in different locations. (Cuthbertson Decl., ¶ 9). Foth stored his PPE in a cabinet or coat rack in his personal office. (Cuthbertson Decl., ¶¶ 9, 10). Lucus stores his PPE in a cabinet at his workstation inside the Maintenance shop. (Cuthbertson Decl., ¶ 9). Plaintiffs were only required to change into limited PPE after they arrived to their primary work area. (Cuthbertson Decl., ¶¶ 6, 10). To the extent Plaintiffs' duties called them outside their work area to a process area, they then donned additional PPE per PPE Policy Section 6.5.1 at that time and they were provided sufficient time to doff the PPE before the end of their scheduled shift. (Cuthbertson Decl., ¶ 10).

## III.   LAW AND ANALYSIS

### A.   Standard of Review

District courts have discretion to implement 29 U.S.C. § 216(b) by certifying FLSA lawsuits as collective actions and allowing notice to putative collective members. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989). However, they should do so *only* in appropriate cases. *Id.* In seeking court-authorized notice, Plaintiffs are, in effect, asking for the Court's assistance to locate potential plaintiffs and thereby expand the scope of the lawsuit. *Severston v. Phillips Beverage Co.,* 137 F.R.D. 264, 267 (D. Minn. 1991). Accordingly, courts should carefully exercise their discretion to avoid unnecessarily "stirring up" litigation. *Id.*

Courts in this District apply a two-part test to determine whether an FLSA claim should proceed on a collective basis. *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). Under the first step, the named plaintiff must establish that others are similarly

situated "by making a modest factual showing" demonstrating they "together were victims of a common policy or plan that violated the law." *Id.* (quotation marks and citations omitted).

This first step is an "important and functional step in the certification process." *Adair v. Wis. Bell, Inc.*, 2008 U.S. Dist. LEXIS 68942, at *9 (E.D. Wis. Sept. 11, 2008). "Though lenient, the 'modest factual showing' standard is not a mere formality." *Nogueda v. Granite Masters, Inc.*, 2010 U.S. Dist. LEXIS 37657, at *5 (N.D. Ind. Apr. 14, 2010). Nor is it "a matter of rubber-stamping." *Blakes v. Ill. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 43147, at *6 (N.D. Ill. Apr. 21, 2011). Rather, the named plaintiff must "demonstrate a factual nexus that binds potential members of a collective action together." *Gromek v. Big Lots, Inc.*, 2010 U.S. Dist. LEXIS 134009, at *2 (N.D. Ill. Dec. 17, 2010). The plaintiff must provide evidentiary support for this nexus; he cannot simply rely on his complaint. *Boyd v. Alutiq Global Solutions, LLC*, 2011 U.S. Dist. LEXIS 88656, at *18-19 (N.D. Ill. Aug. 8, 2011).

Furthermore, the plaintiff must "successfully engage" the defendant's evidence to the contrary, which courts must also consider when determining whether to conditionally certify an action. *See Grayson v. K Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996); *see also Blakes*, 2011 U.S. Dist. LEXIS 43147, at *6. Where, as here, the plaintiff has not made at least a modest factual showing that certification is appropriate, "[i]t would be a waste of the Court's and the litigant's time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

### B.    Plaintiffs Fail To Make A Modest Factual Showing Demonstrating A Common Policy Or Plan That Violated The Law.

Section 6.4 of INEOS' written Personal Protective Equipment Procedures/Work Instructions policy ("PPE Policy") provides that personnel do not need to don PPE before

5

arriving at their workstation or to doff PPE after leaving the workstation, expressly stating: "The minimum PPE requirement is not in effect when reporting to or from the workstation." (Cowser Decl., ¶ 37, Ex. R). This demonstrates INEOS' intent to comply with the FLSA, not violate it. *MacGregor v. Farmers Ins. Exchange*, 2011 U.S. Dist. LEXIS 80361 (D.S.C. July 22, 2011) (denying plaintiff's motion for conditional certification when defendant's policy did not violate the FLSA). Since the first prong of the collective action test requires Plaintiffs to make a modest factual showing that they and other employees were victims of a common policy or plan *that violated the law*, the collective action cannot go forward if the law clearly allows INEOS' actions. *Powers v. Centennial Comms. Corp.*, 679 F. Supp. 2d 918, 927 (N.D. Ind. 2009) (citing *Szabo v. Bridgeport Mach., Inc.,* 249 F. 3d 672, 676 (7th Cir. 2001)).

Such is the case here. Indeed, in their moving papers, Plaintiffs do not identify a single common policy that *violated the law*. Instead, Plaintiffs merely refer to INEOS' "Dress Code" policy "which states that '[e]mployees working in Operations, Maintenance, Logistics, and the Lab are required to wear the uniform provided by the company and safety shoes.'" (Dkt. 16, at 2-3). Plaintiffs do not even attempt to argue that INEOS' Dress Code policy somehow violated the law. Instead – without reference to *any* INEOS policy or procedure – Plaintiffs claim that INEOS did not compensate them for time spent donning their PPE prior to the start of their shift, walking from the employee locker room to their work station, walking from their work station to the employee locker room at the end of their shift, and doffing their PPE. (Dkt. 16, at 3). This, however, is not in compliance with INEOS' PPE Policy, which instructs employees to don their PPE *after* they report to their workstation and to doff it *before* they leave it. (Cowser Decl., ¶ 37, Ex. R). It is also contrary to INEOS' Working Hours for Hourly Employees ("Working Hours Policy") which expressly states that employees are paid according to the actual number of hours

6

worked, as recorded on their time cards. (Cowser Decl., ¶ 8, Ex. C).

Basing their claims on a misstatement of INEOS' donning and doffing policy is fatal to Plaintiffs' ability to conditionally certify a collective. *Adair,* 2008 U.S. Dist. LEXIS 68942. In *Adair*, the plaintiffs erroneously claimed that the defendant had an unlawful policy of paying call center employees based only on time that they were logged into the phone system. *Id.* at *11-12. The court held that there was a significant difference between an *actual* policy (which would affect the whole company) and *perceived* policy (which could affect just a few individuals). *Id.* at *14. Because the plaintiffs were unable to explain the basis for their understanding of the policy, and provided no factual support that others shared their understanding of the policy, they failed to make a modest factual showing that employees were similarly situated. *Id.* at *14-15; *see also, Brooks v. Bellsouth Telecommunications, Inc.,* 2009 U.S. Dist. LEXIS 20552, at *30 (N.D. Ga. Feb. 10, 2009) (if plaintiff's evidence relates to varying levels of understanding amongst employees regarding company policy, certification is improper).

*Adair* confirms that Plaintiffs' apparent misunderstanding of INEOS' donning and doffing policy justifies skepticism regarding *all* of their allegations in this case. As in *Adair*, Plaintiffs here provide no evidence that the rest of the putative collective shared their misunderstanding of the donning and doffing policy. Thus, Plaintiffs fail to make even a modest factual showing demonstrating a common policy or plan that violated the law. As a result, Plaintiffs' motion for conditional certification should be denied.

    **C.**    **Plaintiffs Fail to Define a Manageable Collective of Similarly Situated Individuals.**

A modest factual showing that the putative collective has suffered the same injury is required to prevent costly "class action fishing expeditions." *Dreyer v. Altchem Envtl. Servs.*, 2006 U.S. Dist. LEXIS 93846, at *7 (D.N.J. Dec. 12, 2006). Where, as here, there is no evidence

7

that the putative collective is similarly situated, "allowing for opt-in notification and discovery throws a huge burden upon defendants without any indication that the goals of the collective action mechanism are likely to be met." *Powers,* 679 F. Supp. 2d 918, 922; *see also Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982).

      To avoid the waste of court and litigant resources, courts in this District have found the modicum of evidence offered by Plaintiffs' in this case – merely their own declarations – insufficient to certify a collective action of *any* sort. *See, e.g.*, *Flores,* 289 F. Supp. 2d at 1046 (N.D. Ill. 2003) ("It is the opinion of the Court that a demonstration of Lifeway's payment practice concerning two out of fifty employees (four percent of Defendant's workforce) does not rise to the level of a common policy or plan by Lifeway that violated the FLSA."). The court's opinion in *Boyd v. Alutiiq Global Solutions, LLC* is particularly instructive. There, three of defendant's former employees moved for conditional certification under the FLSA. *Boyd*, 2011 U.S. Dist. LEXIS, at *3, 4, 11, 14. Plaintiffs did so offering only their own declarations as well as a declaration from one other employee. *Id.* at *4, 11, 14. In addition to describing their own experiences, the declarants claimed that defendant's pay practices were consistent among all of its employees, based on unidentified conversations with unidentified co-workers. *Id.* at *5-6. The court denied the plaintiffs' motion in its entirety, concluding that the allegations in the complaint, "read in connection with the declarations submitted by all parties, do not provide sufficient evidence that the conduct of which Plaintiffs complain is pervasive enough to affect [all of defendant's hourly employees]." *Id.* at *19.

      Examination of the evidence here likewise demonstrates that this matter is not suited for conditional certification. Foremost, the evidence reveals that Plaintiffs themselves are not similarly situated to others in the putative collective. Indeed, if Plaintiffs' allegation that they

8

donned their PPE off-the-clock is to be believed, such conduct was in direct violation of INEOS' policies and procedures. Moreover, Plaintiffs provide absolutely no evidence that any other hourly employee had a similar understanding of INEOS' policy in the donning and doffing of PPE. (*See generally* Dkt. 16-1, Foth and Lucus Declarations). Given these facts, Plaintiffs cannot satisfy their burden for conditional certification. *See Merriweather v. Sw. Research Inst.,* 2010 U.S. Dist. LEXIS 117297, at *10 (S.D. Ind. Nov. 3, 2010).

### 1. Plaintiffs' Declarations Do Not Show That Others Are Similarly Situated.

Here, Plaintiffs only offer their own declarations in support of their motion for conditional certification. Two declarations, that represent a mere two percent of Plaintiffs' defined collective and which provide little in the way of competent evidence, do not satisfy Plaintiffs' burden. (Cowser Decl., ¶ 19). "Such a constricted sampling of putative class members fails to support the Plaintiff's assertion of widespread FLSA violations which, purportedly, result from a common policy or plan." *Thompson v. Speedway SuperAmerica LLC*, 2008 U.S. Dist. LEXIS 115050, at *16 (D. Minn., Aug. 21, 2008); s*ee also Flores,* 289 F. Supp. 2d at 1046 (evidence that demonstrated employer's payment practices with respect to two employees out of fifty did not amount to "even a 'modest factual showing' of a common policy or plan"); *West v. Border Foods, Inc.,* 2006 U.S. Dist. LEXIS 46506, at *19 (D. Minn., July 10, 2006) (denying motion for certification where only "six (6) of the potential class of approximately 240 shift managers, who are employed at Pizza Hut restaurants owned by the Defendants – 2.5 percent of the potential class – were allegedly required by their store managers to work off-the-clock"); *Harrison v. McDonald's Corp.,* 411 F. Supp. 2d 862, 870-71 (S.D. Ohio, Sept. 2, 2005) (averments from two employees who claimed FLSA violations, out of potential class of 300, were insufficient to allow for conditional certification).

Moreover, declarations that make generalized allegations and vague references to others who may be similarly situated are likewise insufficient. *See Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 928-29 (D. Ariz. 2010) (denying certification where plaintiff relied primarily on own declaration, which provided nothing more than her opinions, did not name any alleged similarly situated individuals she talked to, and relayed matters outside her personal knowledge); *Nogueda*, 2010 U.S. Dist. LEXIS 37657, at *7-8 (plaintiff failed to make modest factual showing that others were similarly situated, though he submitted his affidavit (identifying nine co-workers whom he allegedly spoke to and who allegedly claim to have been denied overtime), his pay stubs, and the paystubs of his son, who was a former employee of the defendant); *O'Donnell v. Robert Half*, 429 F. Supp. 2d 246, 250-51 (D. Mass. 2006) (affidavits of two named plaintiffs stating that they were familiar with other current and former employees whom they believed would be interested in joining the lawsuit did not justify certification); *Hall v. Burk*, 2002 U.S. Dist. LEXIS 4163, at *7-8 (N.D. Tex. Mar. 12, 2002) (denying conditional certification because plaintiff's only proof was her conclusory allegation that all employees were subjected to improper deductions).

To illustrate, in *Lallathin v. Shoe Warehouse*, 2010 U.S. Dist. LEXIS 64096, at *6 (S.D. Ind. June 28, 2010), the plaintiff supported his motion for conditional certification and notice with only his declaration stating that he had talked to other store managers who told him that they were similarly required to work overtime without pay. The court found that this was simply not enough to support collective action certification and that the court could not "find a single case that has certified a collective action based only on these grounds." *Id.; see also Manzi v. Mardi Gras Gaming*, 2011 U.S. Dist. LEXIS 57403, at *5-6 (S.D. Fla. May 25, 2011) (plaintiff's

allegation in his affidavit that he was "aware of other poker dealers who are willing to join this lawsuit," did not demonstrate that similarly situated individuals existed and desired to opt in).

Here, Plaintiffs' declarations are even more deficient than those routinely found to be insufficient to support conditional certification. In his declaration, Foth attempts to attest that "other hourly employees" were subject to the same policies and procedures, took the same amount of time to don and doff their PPE, and were not paid for that time. (Dkt. 16-1, ¶¶ 11-15, 17-24). In so doing, however, Foth does not even attempt to assert that he spoke to any other hourly employee or that they have any interest in opting into this case. (Dkt. 16-1, Foth Decl.). Lucus' declaration – which is virtually identical to that of Foth – is similarly deficient. (Dkt. 16-1, ¶¶ 11-15, 17-24). Lucus likewise attempts to declare that "other hourly employees" were subject to the same alleged donning and doffing policy without establishing any personal knowledge of those facts, or even attesting that he spoke to any potential member of the putative collective. (Dkt. 16-1, Lucus Decl.). As a result, Plaintiffs' evidence is woefully deficient and cannot support any finding that the alleged putative collective is similarly situated to Plaintiffs.

### 2.     Plaintiffs Are Not "Similarly Situated" to the Putative Collective.

Plaintiffs' evidence – simply their own declarations and INEOS' "Dress Code" policy – does not provide the required factual showing that they are similarly situated to any other hourly employee working in every single Department within INEOS' Channahon site. Initially, Plaintiffs fail to present any evidence that any other hourly employee had a similar misunderstanding of INEOS' donning and doffing policy as they did.

Moreover, both Plaintiffs worked solely in the Maintenance Department, and yet, they gloss over the meaningful differences in work experiences between the Maintenance Department and other Departments at the site. (Cowser Decl., ¶¶ 5-6). Unlike employees in Operations or the QC Lab, Plaintiffs can leave work each day without waiting for anyone to relieve them.

11

(Kingsbury Decl., ¶ 5). In addition, Plaintiffs' PPE requirements were different from those in either Operations or the QC Lab. For example, Maintenance employees are only required to wear safety shoes, fire resistant clothing ("FRC"), and safety glasses with side shields. (Cowser Decl., ¶ 38, Ex. R, PPE Policy § 6.5.4). Conversely, for employees working in the Operations Department, minimum PPE in the process area consists of a hard hat, safety glasses with side shields, hearing protection where required, safety shoes, and FRC that is fully zipped and sleeves buttoned. (Cowser Decl., ¶ 39, Ex. R, PPE Policy § 6.5.1). Unlike other employees, PPE for those in the QC Lab consists of a lab coat, jump suit or shirt and pant combination, safety glasses with side shields, and safety shoes. (Cowser Decl., ¶ 41, Ex. R, PPE Policy § 6.5.3).

As a result, Plaintiffs have not established under even a lenient standard that they are similarly situated to the putative collective they seek to represent. Thus, Plaintiffs' motion for conditional certification should be denied.

   **D.**  **Plaintiffs Cannot Establish That Any Other Potential Plaintiffs Desire to Become Part of This Case.**

Plaintiffs ask for a collective of "Defendant's current and former employees, specifically those hourly employees working in operations, maintenance, logistics, and the lab . . ." (Dkt. 16, at 1-2), when no other hourly employee has submitted a consent or a declaration showing how they are similarly situated to Plaintiffs and that they too were victims of a misunderstanding of INEOS' donning and doffing policy. *See, e.g., Lance v. The Scotts Co.*, 2005 U.S. Dist. LEXIS 14949, (N.D. Ill. July 21, 2005) (a showing that others who desire to opt in must be made before a case can proceed as an FLSA collective action); *Boyd*, 2011 U.S. Dist. LEXIS 88656 (denying certification and finding that that the plaintiffs' evidence, in the form of five declarations, did not establish a practice or policy at other offices); *Adair,* 2008 U.S. Dist. LEXIS 68942, at *25

(denying certification and holding that plaintiffs' experiences alone "provide[d] no evidence that plaintiffs were similarly situated to employees at other of Wisconsin Bell's call centers.").

### E. The Court Should Reject Plaintiffs' Proposed Notice.

The Court has broad discretion to formulate the opt-in notice in order to ensure that the litigation is conducted in an "orderly and sensible" manner and to ensure that putative class members do not receive "misleading communications." *Hoffman-LaRoche, Inc.*, 493 U.S. at 170, 172. Thus, to the extent that the Court is inclined to certify a collective, INEOS objects to Plaintiffs' proposed notice and consent form (Dkt. 16-1, Exs. A, B) as discussed in detail below.

#### 1. In The Event This Court Grants Plaintiffs' Motion, It Must Be Revised.

The opt-in notice "must 'be scrupulous to respect judicial neutrality… [and]…take care to avoid even the appearance of judicial endorsement of the merits of the action.'" *Hoffman-LaRoche, Inc.,* 493 U.S. at 174. Plaintiffs' notice and consent form are not neutral. They are overly solicitous, one-sided, and contain a misleading heading that insinuates court endorsement. (Dkt. 16-1, Ex. A, B). This could mislead potential plaintiffs. Moreover, the notice must fully inform potential opt-ins of both their rights *and* their obligations should they choose to opt-in. This may include language that they may have to pay for Defendant's fees and costs in the event their claims are unsuccessful. *See Garcia v. Elite Labor Servs., Ltd*., 1996 U.S. Dist. LEXIS 9824, at *12 (N.D. Ill., July 12, 1996). Plaintiffs' proposed notice here fails to include any such language and, therefore, is defective. In the event the Court grants Plaintiffs' Motion, INEOS respectfully requests that the Court order the parties to meet and confer with regard to the content of the notice and consent form.

#### 2. Any Collective Should Be Limited to Hourly Maintenance Employees.

Plaintiffs seek to certify a collective that includes "current and former employees,

13

specifically those hourly employees working in operations, maintenance, logistics, and the lab . . ." (Dkt. 16, at 1-2). Plaintiffs' proposed collective is overbroad in scope. As discussed in detail above, if any collective is certified – which INEOS believes is not warranted – it must be limited solely to current and former hourly employees employed in the Maintenance Department of INEOS' Channahon site, as both Plaintiffs solely worked in that capacity.

### 3. The Privacy Rights of the Collective Cannot Be Violated.

Plaintiffs request disclosure of "a list of the potential opt-in plaintiffs' names, last-known mailing addresses, last-known telephone numbers, email addresses, job titles and dates of employment." (Dkt. 16, at 9). Even if the Court conditionally certifies a collective and facilitates notice, there is no basis for requiring INEOS to produce this extensive information. Employers are obligated to protect confidential personnel information entrusted to them by their employees. *See e.g., Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994); *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 622 (S.D. Ind. 2002).

If the Court decides to facilitate notice, it should do so in a manner that will not subject putative class members to unwarranted contact or solicitation. To that end, the Court should order Defendant to produce solely the names and addresses of the putative collective to a third party administrator, so that the third party administrator may issue the notice. This allows prospective plaintiffs to make an independent and objective decision as to whether they want to participate in the lawsuit, without being pressured, harassed or repeatedly solicited by Plaintiffs' counsel. *See Wren v. RGIS Inventory Specialists*, 2007 U.S. Dist. LEXIS 95439, at *11 (N.D. Cal., Dec. 17, 2007) (ordering contact information for prospective class members be produced to third-party administrator to issue notice in order to protect class member privacy); *see also In re American Family Mut. Ins. Co. Overtime Pay Litigation*, 2009 U.S. Dist. LEXIS 11169, at *11

(D. Colo. Feb. 3, 2009) ("use of a third-party administrator is appropriate to protect the integrity of the process and to protect the confidential information of potential opt-in plaintiffs").

### 4. Plaintiffs' Request for Email and Text Notice Should Be Denied.

Plaintiffs seek to send notice not only by first class mail, but by email or text. "Courts generally approve only a single method for notification unless there is a reason to believe that method is ineffective." *Wolfram v. PHH Corp.,* 2012 U.S. Dist. LEXIS 181073, at *4 (S.D. Ohio 2012). Plaintiffs have not satisfied their burden to show "factual circumstances that would render service by ordinary mail ineffective." *Fairfax v. Hogan Transportation Equip., Inc.*, 2017 U.S. Dist. LEXIS 160907 at *8 (S.D. Ohio Sept. 29, 2017). Here, Plaintiffs' email and text request should therefore be denied. *See Espenscheid v. DirectSat USA, LLC,* 2010 U.S. Dist. LEXIS 55578, *41 (W.D. Wis. 2010); *Aguirre v. Tastee Kreme #2, Inc.,* 2017 U.S. Dist. LEXIS 83944, *22-23 (S.D. Tex. Apr. 13, 2017); *McCoy v. RP, Inc.,* 2015 U.S. Dist. LEXIS 142521, *15 (D.S.C. Oct. 19, 2015).

### 5. Plaintiffs' Proposed Reminder Notice Should Not Be Permitted.

Plaintiffs request for a "reminder" within the final 30 days of the notice period is not necessary and should not be allowed. "In facilitating notice, the Court must avoid communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Hoffman-La Roche Inc.,* 493 U.S. at 168-69. As such, courts often reject reminder notices, "recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit-and encouraging participation." *Fairfax,* 2017 U.S. Dist. LEXIS 160907 at *7.

## IV. CONCLUSION

As set forth in detail herein, conditional certification is not appropriate under the circumstances and Plaintiffs' Motion should be denied.

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney for Defendant, certifies that on April 24, 2019, he caused to be filed the foregoing ***Defendant INEOS Styrolution America LLC's Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification and Issuance of Notice Pursuant to § 216(b) of the FLSA*** with the Electronic Case Filing ("ECF") system of the United States District Court for the Northern District of Illinois, which caused notice of same to be sent via ECF system to:

| | |
|---|---|
| Marc J. Siegel | Edward Patrick Graham |
| James D. Rogers | 1112 South Washington, Suite 212 |
| Bradley S. Manewith | Naperville, IL 60540 |
| Siegel & Dolan Ltd. | |
| 150 N Wacker Drive, Suite 3000 | |
| Chicago, IL 60606 | |

/s/ Darren M. Mungerson